_____

**ROMPER ROOM, Inc.,**
**1158 S. Military Avenue**
**Green Bay, WI 54304**

**ROMPER ROOM II, Inc.,**
**313 Mall Drive**
**Appleton, WI 54915**

**GREG AND TAMMY GERING,**
**2650 Kunzer Beach Lane**
**Little Suamico, WI  54141**

       **Plaintiffs,**

   vs.

                              **Case No.**      14-1217

**WINMARK CORPORATION**
**605 Highway 169 N, Suite 400**
**Minneapolis, MN 55441**

       **Defendant.**

_____

## COMPLAINT
_____

1. Plaintiff Romper Room, Inc., ("Romper I") is a Wisconsin corporation with its principal place of business located at 1158 S. Military Avenue, Green Bay, Wisconsin.  Romper I does business as a Once Upon A Child franchisee.

2. Plaintiff Romper Room II, Inc., ("Romper II") is a Wisconsin corporation with its principal place of business located at 313 Mall Drive, Appleton, Wisconsin. Romper II does business as a Once Upon A Child franchisee.

3. Defendant Winmark Corporation is a Minnesota Corporation with its principal place of business located at 605 Highway 169 N, Suite 400, Minneapolis, Minnesota.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because the Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

5. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the Eastern District of Wisconsin, and because Defendants conduct a substantial amount of business in this District.

## FACTS COMMON TO ALL CLAIMS

6. Romper I and Romper II each own and operate a Once Upon A Child franchise store ("OUAC"), which are both located in Wisconsin.

7. Romper I has operated as an OUAC franchisee in Green Bay since 2000, and recently renewed its franchise agreement with Winmark in August 2013. A copy of the operative franchise agreement between Romper I and Winmark is attached hereto as Exhibit A.

8. Romper II has operated as an OUAC franchisee in Appleton since June 2005. A copy of the operative franchise agreement between Romper II and Winmark is attached hereto as Exhibit B.

9. Both Romper I and Romper II are wholly owned by Tammy Gering and Greg Gering, who are husband and wife.

10. Under the franchise agreements, in exchange for the rights to use OUAC's name, marks, logos and business systems, along with other franchise amenities, Romper I and Romper II remit to Winmark five percent of their gross sales.

11. The franchise agreements also provide that the franchisee and franchisor will enter into joint advertising and promotional activities, which require Romper I and Romper II to pay additional fees to Winmark.

12. Romper I and Romper II and Winmark share a continuing financial interest and mutual interdependence which characterize such franchise and dealership relationships.

13. Throughout their existence as OUAC franchisees, both Romper I and Romper II have consistently complied with each and every upgrade and enhancement required by Winmark, including more than $30,000 to upgrade the Green Bay store when Romper I renewed its franchise agreement in 2013.

14. Romper I and Romper II have consistently been among Winmark's highest performing OUAC franchises, and have achieved Winmark's "Gold Level of Honor" for the last several years. To achieve this honor, an OUAC franchisee must have more than $1,000,000 in annual sales. In fact, both stores have consistently increased their annual sales revenues every single year since their inception.

15. As part of its franchise system, Winmark requires all OUAC franchisees to utilize its proprietary point-of-sale (POS) software system, subject to the Computer Software License Agreement (the Software Agreement), which is attached to each of the franchise agreements as Exhibit B.

16. Romper II has managed to achieve more than $1,000,000 in gross annual sales despite the fact that for the last several years, it has experienced consistent and unmanageable problems with the POS software system that Winmark requires its franchisees to use.

17. Under the Software Agreement, Winmark is required to "provide ongoing maintenance and repair services for the Software … owned by Winmark so that the Software will perform substantially as described in documentation Winmark has provided."

18. However, despite this clear obligation, Winmark has not provided such services to the Appleton store owned by Romper II. The Appleton store's POS system consistently fails to operate as promised and has resulted in significant losses to Romper II.

19. On July 17, 2014, Greg Gering pled no contest to and was convicted of three misdemeanor charges of theft, relating to charges filed against him for alleged BadgerCare fraud.

20. On July 18, 2014, two articles appeared online on the websites for the Green Bay Press Gazette and the Appleton Post-Crescent, describing the charges and the sentence Mr. Gering received. Those articles also indicated that Mr. Gering owned OUAC franchises with his wife, Tammy. Since that date, and to Plaintiffs' knowledge, no additional articles have been posted online or otherwise published regarding the incident.

21. On July 21, 2014, the Gerings received a letter addressed to both Romper I and Romper II purporting to terminate both entities' franchise agreements effective October 22, 2014. A true and correct copy of that letter is attached hereto as Exhibit C.

22. In the letter, Winmark indicates that Greg Gering's misdemeanor charges breached the franchise agreement, because his conviction resulted in an adverse impact on the franchise business.

23. The letter also indicates that the defaults are incurable under Wisconsin law.

24. On August 7, 2014, the Plaintiffs responded to Winmark via letter and through their attorneys, offering options to cure any alleged default and otherwise work with Winmark to deal with the issues it raised, including removing Greg Gering from the franchise business and entirely disassociating Mr. Gering from the OUAC franchise operations. A true and correct copy of that letter is attached hereto as Exhibit D.

25. Despite Winmark's unsupported assertions that Greg Gering's misdemeanor convictions resulted in an adverse impact on the reputation of the franchise business, Plaintiffs' franchise locations have continued to achieve unprecedented success. Indeed, even after the publication of the two newspaper articles discussing the charges, sales during this year's annual back-to-school, Halloween, and winter clothing events have outpaced sales during the same events in 2013. Moreover, sales for 2014 overall are on track to beat the gross revenue figures for 2013.

## CLAIM FOR VIOLATION OF WIS. STAT. §§135.03 AND 135.04

26. Plaintiffs hereby incorporate by reference paragraph 1-25, the same as if said paragraphs were repeated herein.

27. The Wisconsin Fair Dealership Law (WFDL), Wis. Stat. §135.01, *et. seq.* applies to the relationships between the Plaintiffs and Winmark.

28. Romper I and Romper II are "dealers" as defined by the WFDL.

29. Each Plaintiff's franchise agreement qualifies as a dealership because: (1) it is a contract between the Plaintiffs and Winmark; (2) the Plaintiffs sold or distributed goods or services associated with Winmark and/or used Winmark's proprietary marks, logos or other proprietary symbols as required under the franchise agreements; and (3) the Plaintiffs and Winmark share a community of interest because there is a continuing financial interest in the

operation of the OUAC franchises and/or the marketing of the goods and services associated with Winmark and OUAC.

30. The relationship between the Plaintiffs and Winmark is interdependent and each depends upon the other for their mutual financial benefit. Winmark receives a portion of the Plaintiffs' gross sales receipts in exchange for the right to use Winmark's proprietary marks, logos and franchise system design.

31. Moreover, the Plaintiffs have made a significant financial investment into their respective business operations, including, but not limited to, the purchase of a substantial amount of equipment, fixtures and merchandise, and also incurred considerable personal expense over the years in terms of remitting to Winmark the franchise fees, portions of gross sales and other related fees. The Plaintiffs have also obligated themselves to long-term leases for both franchise locations.

32. The WFDL expressly provides that it shall be "liberally construed and applied to promote its underlying remedial purposes and policies." Wis. Stat. §135.025(1). The WFDL also expressly provides that "[t]he effect of [the WFDL] may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only." Wis. Stat. §135.03.

33. A grantor may not terminate a dealership without good cause, and the burden of proving good cause is on the grantor. Wis. Stat. §135.03.

34. "Good cause" is defined by the WFDL to mean a "[f]ailure by a dealer to comply substantially with the essential and reasonable requirements imposed upon a dealer by the grantor, or sought to be imposed by the grantor." Wis. Stats. §135.02(4)(a).

35. Even if a grantor has "good cause" to terminate a dealership, the WFDL requires the grantor to "provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances," consistent with Wis. Stat. §135.04.

36. Any notice given pursuant to the WFDL must also provide the dealer with "60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void," as set forth in Wis. Stat. §135.04.

37. Winmark failed to provide Plaintiffs with the required sixty days in which to rectify the claimed deficiency – indeed, they unilaterally determined that there was no possible cure.

38. Winmark's unilateral termination of the franchise agreements for Romper I and Romper II without providing the requisite right to cure was a direct violation of the WFDL.

39. As a direct and proximate result of Winmark's unilateral termination of the Plaintiffs' franchise agreements, Plaintiffs have incurred substantial damages, including, but not limited to, the demise of their entire business operations, the loss of employment, and damage to their respective reputations and good will.

40. The Plaintiffs are entitled to recover the damages they have sustained and will sustain as a consequence of Winmark's actions.

## CLAIM FOR BREACH OF CONTRACT

41. Plaintiffs hereby incorporate by reference paragraph 1-40, the same as if said paragraphs were repeated herein.

42. A valid contract exists between Plaintiffs and Winmark in the form of the Software Agreements and the underlying Franchise Agreements.

43. Section I.E.1 of the Software Agreement requires that Winmark ensure that the software perform as described in the documentation provided by Winmark.

44. However, the software has consistently underperformed at the Appleton store owned by Romper II, and Winmark has failed to ensure performance as required by the contract.

45. Winmark's breach of contract, including its failures to ensure performance and to remedy performance failures, have caused significant damages to Romper II.

46. Plaintiffs hereby demand a jury of 12.

WHEREFORE, Plaintiffs seek judgment against Defendant as follows:

A. Plaintiffs request a preliminary injunction to prevent Winmark from terminating the franchise relationships and any rights under the franchise agreements, pending the outcome of this action;

B. Plaintiffs seek a permanent injunction from this Court reinstating all Plaintiffs' rights under the franchise agreements;

C. As an alternative to entry of a permanent injunction, Plaintiffs seek judgment granting Plaintiffs the damages suffered as a result of Defendant's violations of the WFDL, including, but not limited to: all lost future profits; loss of business value; loss of goodwill; and other related costs and expenses;

D. Judgment granting Romper II damages as a result of Defendant's breach of the Software Agreement and Franchise Agreement;

E. Judgment granting Plaintiffs their costs and reasonable attorney fees pursuant to Wis. Stat. §135.06;

F. Judgment granting such other and further relief in Plaintiffs' favor as this Court deems just and equitable under the circumstances.

Dated this 1st day of October, 2014.

                                **HALEY PALMERSHEIM, S.C.**

                                /s/ Cathleen A. Dettmann
                                Kevin J. Palmersheim
                                Wisconsin State Bar #1020726
                                palmersheim@hplawoffice.com
                                Cathleen A. Dettmann
                                Wisconsin State Bar #1048315
                                dettmann@hplawoffice.com
                                Attorneys for Plaintiffs
                                1424 N. High Point Road, Ste. 202
                                P.O. Box 628005
                                Middleton, WI 53562-8005
                                (608) 836-6400