UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROMPER ROOM INC., a Wisconsin Corporation,
ROMPER ROOM II INC., a Wisconsin Corporation,
GREG GERING and TAMMY GERING,

        Plaintiffs,

    v.                                  Case No. 14-C-1217

WINMARK CORPORATION
a Minnesota Corporation,

        Defendant.

**ORDER FOR BOND**

On October 10, 2014, the Court issued its decision stating that it would enjoin Defendant Winmark from terminating its Franchise Agreements with Plaintiffs under which they operate two Once Upon a Child retail stores, one in Green Bay and one in Appleton upon Plaintiffs' posting security. The Court indicated in its decision that it would consult with the parties before setting the bond required under Rule 65 of the Federal Rules of Civil Procedure. Having consulted with the attorneys, the Court concludes that a bond in the amount of $20,000 is appropriate based on the record before it.

Rule 65(c), by its terms, seems to require the Court to order a movant to post bond or give security in any case in which a motion for a preliminary injunction or a temporary restraining order is granted. The rule reads:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).

Despite this seemingly mandatory language, however, the rule has been construed to invest district courts with discretion as to the amount of security required, if any. In other words, in some cases, the court may decline to order a bond if it finds that no damages will likely result from the court's entry of the injunction. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." (internal quotation marks omitted)).

On the other hand, if it appears that damages flowing from an improperly granted injunction are possible, the Court should err on the high side when setting the amount of security. *Mead Johnson and Co. v. Abbott Laboratories*, 2001 F.3d 883, 888 (7th Cir. 2000). This is because the defendant's sole source of recovery, in the event the injunction entered by the Court is later found to have been improperly granted, is the amount of the bond.

Here, Plaintiffs argue that no bond should be ordered. Defendant seeks to terminate the franchises because one of the owners has been convicted of three counts of misdemeanor theft based upon his fraudulent application for government-subsidized health benefits. Defendant claims that the conviction has caused damage to their name and trademarks and, further, that it is likely to result in a loss in sales. Plaintiffs note, however, that their sales have actually increased since the conviction this past July when compared with the same time period last year. Furthermore, they note that the Court has already determined in its balancing analysis that whatever damage that is likely to result from the bad publicity surrounding the conviction has already occurred. Thus, Plaintiffs contend that no bond is necessary.

2

Defendant, in contrast, argues that the Court has been provided only a snapshot of the sales record, and that, in fact, the growth in sales experienced by Plaintiffs' stores may be significantly less than the growth experienced in stores operating elsewhere. They note that any Internet search for the store brings up the fact of the owner's conviction and, thus, damage to their name and to the reputation of the stores are likely to continue. Emphasizing the need to set bond in an amount that will allow full recovery in the event the Court is found to have erred in granting the injunction, they ask for a bond of between $50,000 and $100,000.

The Court is satisfied that, at least at this point, a lower bond should be sufficient. Any assessment or attempt to determine likely damages is somewhat speculative at this point. The availability of the Internet may result in damage to the stores' reputation and sales beyond what the Court anticipates. At the same time, however, it is not clear that allowing Defendant to terminate the Franchise Agreements would change things. Even a change of ownership of the stores at this point would not erase the connection between the stores and the conviction of its previous owner. Unless prospective customers go beyond the Internet, they may not become aware that ownership has changed even if Defendant was allowed to terminate the Agreements. If that is true, then enjoining Defendant from terminating the Agreements will result in no harm beyond what has already resulted from the conviction and the publicity posted on the Internet.

In any event, based on the record as it now stands, the Court concludes that a bond in the amount of $20,000 should be sufficient to compensate Defendant for any damages it is likely to sustain in the event the Court's decision granting the injunction is found to be in error. In reaching this conclusion, I consider not only the possibility of damages, but also the likelihood that the case will be resolved in a relatively short period of time. It appears that the issue raised may be one of

law that can be decided on motion. If this is true, the time the injunction will be in effect is relatively brief. Moreover, at least at this point, there has been no showing of a loss of sales. In fact, the only evidence before the Court is to the contrary. In the event that this changes and Defendant is able to show a significant loss in sales is more likely to occur, it can request to have the bond increased.

Lastly, the Court has considered Plaintiffs' contention that posting of a bond may work a hardship on them and make difficult their prosecution of the action. Given Plaintiffs' income from the stores as reported in the newspaper account, however, and in the absence of any actual figures as to Plaintiffs' current income, the Court is unwilling to relieve them of the obligation to post security as a condition of having the injunction issued in their favor. Defendant is entitled to the protection the law affords when a preliminary injunction is granted. Here I see no reason to deny Defendant that protection.

Accordingly, and for the foregoing reasons, the injunction previously ordered by the Court will issue upon Plaintiffs' posting a bond in the amount of $20,000. Absent further order of the Court, Defendant is enjoined from terminating the Franchise Agreements with Plaintiffs under which they are now operating their Green Bay and Appleton stores.

**SO ORDERED** this    15th    day of October, 2014.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court